CHARLES S. HATHORN *vs.* ERNEST F. KELLEY, and others.

Sagadahoc.    Opinion June 9, 1894.

*Flowage.    Owners or Occupants.    Non-User.    Laches.    Damages.    Limitations.*
*R. S., c. 92, § 17.*

The annual damages for flowing one's land by a mill dam may be recovered in an action against either the owners or the occupants of the dam.

To constitute an abandonment of a mill-dam so as to exonerate its owners from liability to pay the annual damages previously established in favor of land owners in proceedings for flowage, the non-user must have been absolute and complete, and not partial or temporary merely.

The proceedings in a complaint for flowage partake so much of equitable forms and principles as to allow the equitable doctrine of laches to be administered in an action to recover annual damages which were established in 1838, but not sued for nor demanded for twenty years next preceding the date of the writ in 1892; the plaintiff in the peculiar circumstances of the case being limited to a recovery of the damages becoming payable within the last six years with interest thereon.

ON REPORT.

This was an action of assumpsit, under R. S., c. 92, § 17, for the annual compensation for the flowage of the plaintiff's land, as awarded in accordance with the preceding provisions of the same chapter, at the rate of twelve dollars per year, for twenty years next prior to the date of the writ, and interest thereon, amounting to $403.20. The writ is dated August 1, 1892.

The plaintiff's claim arose out of the proceedings in the complaint of Seth Hathorn v. John R. Stinson and others, dated August 1, 1831, and entered in the C. C. P. for Lincoln county, at the August term of that year. After due appearance and answer, the case was tried by a jury at the following December term, resulting in a verdict for the complainant. The respondents then appealed to the Supreme Judicial Court, where the case was entered at the May term, 1832, and a new trial was granted. *Hathorn* v. *Stinson*, 10 Maine, 224. The case was again tried by a jury at the September term, 1834, in the Supreme Judicial Court, again resulting in a verdict for the complainant. This verdict, upon a motion for a new trial, was sustained, *S. C.*, 12 Maine, 183, and thereupon, at the May term, 1836, commissioners were appointed whose report was accepted at the May term, 1838, awarding the complainant the sum of twelve dollars yearly damages for each year.

*Geo. B. Sawyer*, for plaintiff.
*C. W. Larrabee*, for defendants.

SITTING : PETERS, C. J., WALTON, LIBBEY, FOSTER, HASKELL, WHITEHOUSE, JJ.

PETERS, C. J. This is an action, commenced in 1892, against mill-owners or occupiers for the annual damages caused,

during the last twenty years prior to the date of the writ, to the plaintiff's land from flowage created thereon by the defendants' mill-dam, the action being grounded on a judgment for such damages recovered by the plaintiff's ancestor against the defendants' predecessors in title over fifty years ago. The defense urges several objections against the claim.

It is said by the defense, that all the present owners of the mill are not embraced in the suit. But we find that all the occupiers are sued, and the action may be against owners or occupiers. Really, the occupiers are also the owners, excepting that the wife of one of them may have title to a small undivided share.

It is objected against the validity of the original judgment or decree that there was no finding of damages in gross as well as for annual damages, as now required by the statute. But there was no such requirement when the original judgment was recovered in 1838.

It is contended that the defendants should be exempted from the payment of damages for such portions of the last twenty years covered by the claim in the writ as the mills were shut down and the mill-dam not used. We think a defense of partial abandonment is not maintainable; it must be an actual completed abandonment. At no time has there been an intentional total abandonment.

Lastly, the defendants rely either on the statute of limitations as a legal defense, or on the laches of the plaintiff as an equitable defense, against all the claims of the plantiff which did not accrue within six years prior to the date of the writ. The defense of laches is sufficiently asserted in the defendants' brief statement. There certainly is no justice or equity in the plaintiff's recovery of his full claim. He came into possession of his estate in 1869, since which time until 1888, when the mills and dam were rebuilt by the defendants, it is difficult to see that his premises were seriously affected or injured in the least by flowage. Until 1888, he did not even demand any damages. The old structures were so dilapidated as to be incapable of doing any injury to his land.

Were it not for the remark of the court, in *Knapp* v. *Clark*,
30 Maine, 244, that the ordinary statute of limitations did not
apply to an action of this kind, a conclusion apparently adopted
without much consideration of the question, we should have
regarded the point as at least a debatable one, looking at it
strictly upon a legal view.   The action is not strictly upon the
judgment itself, but is one flowing out of it, and to be evidenced
by it;—grounded upon it as the earlier statute on the subject
expresses it,—an action of assumpsit implying a promise to pay
fixed annual damages.   There is much reason for classifying
such a promise with all other ordinary promises to pay a fixed
sum of money.

But the court of that day were looking at what was then
regarded as a merely legal question, while since that day the
court has regarded the procedure more as equitable then legal.
KENT, J., in *Moor* v. *Shaw*, 47 Maine, 88, after giving reasons
for the conclusion, said :   "Viewed in this light, the strict rules
of pleading applicable to pleading in suits at law commenced
by writs cannot apply ; but the rules in cases in equity do ap-
ply."   In cases in Massachusetts, it is several times said that
the statute proceeding is peculiar and founded in equity and
public policy.   SHEPLEY, C. J., in *Lowell* v. *Shaw*, 15 Maine,
242, describes the equity of that case and of this also in the
remark that, "whoever becomes the owner must take the estate
*cum onère*, and that the owner of the land flowed will be en-
titled to call upon him to pay whatever may be due the land,
unless he has been guilty of laches in collecting them from the
former owner or occupant."   Had the land owner applied for
his damages as they became payable in the present case, his
application would probably have resulted in some settlement or
new adjustment of damages.   He was guilty of laches in not so
doing.   There have been many mutations of occupancy and
ownership since 1838, and not a few since 1869.   If equity
lends her forms of procedure to effectuate the peculiar provisions
of the statute in these cases, she should be accorded the privi-
lege of applying her rules of pleading in order to obtain equit-
able and just results.   As the plaintiff has been guilty of

inexcusable delays in collecting the damages now claimed by him, the penalty will be that he recover none of the damages that were due and payable prior to six years before the date of the writ; but will recover all those becoming due since such date, with interest on each sum payable from time of payment due to the date of judgment thereon.

*Defendants defaulted.*